Today's cases will be called as previously announced. The times will be allotted to counsel. The first case today is number 221864, United States v. Hassan Abbas. Will Attorney Mason please come up and introduce yourself for the record? Thank you. James Mason on behalf of the appellant Hassan Abbas. If I may have two minutes for rebuttal. I'm sorry did you say two? Two. Yes you may. Yes thank you. May it please the court. I'm happy of course to address any questions that the court may have but given the number of issues that are here I'd like to focus on just three main issues. The first is venue, all our venue arguments in general. The second I'd like to address the sufficiency of the evidence particularly when it comes to the interstate commerce nexus of count three and then the intent to participate in fraudulent If there is time then I'd like to address the loss calculations of the foreign loss under 2B1.1. The venue issues obviously are a large part of the argument here and I think to address them we really need to start from the perspective of there was no evidence that Hassan Abbas was in any way involved with the transactions, the communications that led the monetary transactions to take place. The government conceded that they hadn't put any evidence in. What the government's argument was at trial and I'm sure here is that but for him creating these LLC's and the bank accounts and then the transfers that led from that that the losses wouldn't occur. But I think it's important to start from the fact that the allegations only are centered on what he did outside the state of Massachusetts. I think that's important when we're addressing the question of the venue. When we look to each claim, each claim has venue must be established for each claim and they're independent of each. So if you look to the natures of each claim then venue is only attached if it can be proven under that particular statute. Okay, so let's focus on money laundering please. So in fact that was the first one I was going to address. So when it comes to money laundering what we're dealing with is a $7,500 transaction between a business account for one of the corporations that there was evidence and a personal account under the name of Hassan Abbas and there's not really a question that he controlled both of those accounts. But they took, those accounts were both in Illinois. So what we're talking about is an intrastate transaction so that he is accused of by that transaction trying to attempt to hide the origins of that money. So the government of course will say well where did the money come from? You have to look at that transaction itself. And I think when you look at how the conduct elements that are related to money laundering, you're still just looking at the one in Illinois. And unless there is something else that can bring it into Massachusetts, we're not looking at the funds of where that originally came from. Some of these funds could have been from Massachusetts but the transaction itself took place solely in Illinois. And so venue isn't appropriate in Massachusetts despite the fact that there were at least the only named victims were from Massachusetts. What I think, the same as when you go and you look to the monetary transactions which sort of fall under the same rubric, is that those all took place in a different state entirely. The transactions took place in California. And so it does not matter where the money originally came from, alleged to be Massachusetts, if the movement happens in a state that's not here. That's why venues, each separate count has to be looked at independently. When it comes to wire fraud, I think you have to again, you're looking at to the only way that it could apply, the statute could apply, is the originated part. That's the only way that gets into Massachusetts because I think everything else that even the government alleged would admit took place out. So when you look to what is alleged that he participated in originating it, creating the LLCs, the LLCs creating the bank accounts, again, none of that took place in the state of Massachusetts. But aren't the wires, aren't they sent from Massachusetts elsewhere? Money is wired from Massachusetts. I agree with you. I think that it is the idea that it does originate from Massachusetts because it involved victims that were here in the state of Massachusetts. There's the issue, obviously, we addressed here about the proceeds and what proceeds means, but when you look to what is his action, what was his role, his role was even if the government's case is fully accepted is in setting up the LLCs and setting up the bank accounts, actions that couldn't be said to be the but-for cause of the transactions. Transactions occurred because there were these various things. One is that there were spoofed emails for the real estate transactions with the wire and then obviously the romance scams involved continual emails and Facebook communications, Match.com communications that took place going into Massachusetts, but there really wasn't any evidence to suggest Hassan Abbas had tried to avail himself of anything in the state of Massachusetts. Yes, the wires did come from, the wires that issued did come from that, but he still has to be, his mindset has to be taken into account and his actions. But he's got more than one wire, you know, let's say there's only one wire and Massachusetts wasn't aware of it or, oh, it's Massachusetts, but there's repeated wires from same individuals more than once and, you know, he should know it's Massachusetts or at least it's reasonably foreseeable that these people keep sending, you know, the wires from Massachusetts. It is, but you have to still look and see what were the actions, his actions, what affirmative steps did he take to cause the wires to be done and at the same time, he facilitated the wiring of the money from Massachusetts, didn't he, by creating a place to which the money could go. So don't you have to argue that even if he facilitated the money being transferred, that money until after the transfer was not proceeds of the prohibited activity? I think that is, I mean, that is obviously, you're right, Ron, that's part of our argument. To establish it to be in there for his criminal liability, you have to look and say, well, they weren't proceeds when they were in the bank accounts of the people that were in Massachusetts, at least not to him. They were proceeds once they were moved by the Federal Reserve Bank through accounts and they became complete once they got into his account. And those accounts were not in the state of Massachusetts. They were in the state of Illinois. They were in the state of California. They were in the state of Ohio. I mean, like, none of these allow the government to come and try him for these charges here in the state of Massachusetts, despite the fact that... I'm not certain I understand your argument. Is this linked to your argument about the exclusion of the witness who would testify about how the Federal Reserve Bank transfers? Because you may be arguing that, as you just said, it was not proceeds until the Federal Reserve Bank initiated the transfer. However, in response to that, the money is in the Massachusetts accounts. The Federal Reserve Bank initiates the transfer from the Massachusetts accounts. So on that line of argument, it would seem you just conceded these were proceeds. So I think you have to be arguing something else. It was not my intent to concede that these were proceeds in Massachusetts. Yeah, that was clear. But now, could you answer my question? Well, I will certainly try, Your Honor. I think it is part of why they wanted, the counsel, Mr. Boss, wanted to have John Bedreau of Federal Reserve Bank testify, is to explain the difference between transfer messages and transfers themselves. The transfer messages were initiated by the banks in Massachusetts. They are processed and adjusted in the Reserve Bank in the computer system that is housed in Texas. And so it is not really until those sort of come through when they hit another account that they become proceeds such that they can be considered accessible by the person in charge of the wire fraud. Does the record tell us at what point the money passed out of the control of the victim? I think what the record would establish, and I apologize, I don't have citations of it, but I think it would say that at a certain point there is some sort of communication initiated and that they are able to, the person initiating the communication, the bank would try to, and in one of the cases did actually recall it. So I think that it is out of the control once the Fed puts it into the accounts that are being housed in Texas. So are you saying the record shows that if I call my banker and say I want money wired to Joe and here is the wire transfer instructions for you, don't do it, does the record show that it works that way? There is a record and I think there is what Boudreau testified in his voir dire which didn't come before the jury. If the record doesn't show that, if the record doesn't show when the money passes out of control of the victim, whose problem is that, the defendant or the prosecutions? That's a good question, your honor. I would say that, I wouldn't ask it otherwise, I would say that if the, for the defendants, in Mr. Abbas's case, until he takes control, that it is not, he is not criminally liable with it. He cannot take control until those are taken out of which he controls. And so, it would come out of the control of the people in Massachusetts, presumably when it hits the banks in whatever state, whether it's Illinois, California. So your argument is it isn't an issue of being out of the control of the victims, it's an issue of when the defendant took control? I believe that's right. It can be in transit and it is still not under Mr. Abbas's control. And, but it is once it gets into his banks that he takes possession of it, that it becomes proceeds. And that's why we... Aren't these transactions that just take a few seconds through the Federal Reserve System? Yes, but it only takes a few seconds per venue to establish. It's when he himself gets control. And it may only take milliseconds. But there's nothing in this, unless I'm missing something, what in the statutory language hinges it on whether he takes control? Because the language seems to apply to him if he participated in the transfer of proceeds, which he could do without taking control. For example, suppose the victim handed his co-conspirator cash. As soon as the victim handed the cash, presumably that in the co-conspirator walked out the door with the victim's cash, presumably the co-conspirator would have proceeds of the unlawful activity, which could then be transferred out of state. But if we look at, if I may, if we look at that argument, if you're across state lines and you are talking about, you know, the cost of cash across state lines and you grab it then, then I think that supports our argument. Because you only took control of it once you received it. And if you are in another state, then that's the appropriate venue to charge it against you, despite where it may be appropriate on the person who threw you the money. Let me ask you one question. I believe from your brief, if I can be incorrect, if we were to find that any of the, you know, the venue arguments were different counts, the remedy would be dismissal of the count, not acquittal. Are you in agreement with that? Except for count 6A, I would agree with that. Thank you. Yes, may it please the Court, Randall Crown on behalf of the government. I'd like to start with the question that Judge Keat asked, which I think what participation in the transfer means, because I think there's been a lot of talk about general principles of venue, but we have to sort of focus on the statutory language here. And the question is, what is participation in the transfer of proceeds mean and does it imply anything about the receipt of, in any particular form or obtaining into your accounts? One of the things I'd like to know, we pointed a case called Prince, but there are numerous other cases saying that there can be constructive possession of proceeds, that a person can be on the hook for the proceeds without having to pay anything, without having ever received them into their accounts. So his, you know, argument below, which was simply that they are not proceeds in any way until received, is just wrong as a matter of law. No court appears to hold that that is the only moment at which they can be proceeds, but that they can be at some earlier stage. And those do suggest that having control over the movement of the proceeds can be enough, even if they haven't come to you. There's a case called Rayburn, I can submit to court in the 28-J letter, a person defrauded a mortgage company, mortgage company sent funds to the seller of the place, never came into his account, but because he directed and controlled it, it was considered proceeds at that point. And I think that suggests that something less than receiving it into your accounts has to be enough to say that proceeds have been generated. I think it's also, and has left out entirely the, I think, important implications of Section I.3 of the venue statute. This was all enacted at the same time. That provision states that for purposes of this section, a transfer of funds by wire or otherwise is a continuous transaction and venue exists for anybody who participates in any portion of the transaction. Would that be, I know Judge Lynch asked and she noted, these transactions take place in the same venue. So you would agree that that's within the statute? It's almost simultaneous. Well, right. And that's one of the reasons why I think, as the court's questions indicate, I think anybody who's used Venmo or Zelle or anything knows that the instant you hit the button saying send the other person saying got it, and there's no real opportunity to recall. So the idea that that's not in the constructive possession of the person who has sought it from the moment it's irrevocably sent, I mean, I think that would be supported here, which effectively the district court said that this was a transfer of proceeds. Well, let's assume that the defendant need not take possession of the funds to have been found to have participated in the transfer of the funds within the district where the transaction occurred. You still need to show that there was a participation in the transfer of proceeds. So what transfer of proceeds did this defendant participate in other than the ones in Illinois when he moved from one place to another? I think this is where I was pointing to the sort of implications which I think are very important of Section 3, which says that a wire is treated as a single, a transfer of funds is treated as a single activity and venue exists at any part as long as the defendant participated in a portion. And in many ways, it sort of obviates the need to decide when it became proceeds because he concedes, in fact, it's his argument, that they were proceeds when they were received into accounts he controlled. He certainly participated in that limited way. He received the proceeds. And what he concedes were then proceeds at the time that he did receive them. But he also participated in the sense we've argued as a co-conspirator. Well, I don't think he's conceded that they were proceeds that he received. I think he's necessarily conceded that once he received the proceeds, he received them, they at that point were proceeds because they were clearly out of the possession of the victim. But I think, again, and this is where, again, I think the language of Section 3 and the definition of conducts is really important. It says, so Section 3 says that a wire is one thing, is a continuous event, and that if anybody, a person who participates in a portion of it, there's venue against that person at every end of the wire along its path. Conducts says that that includes participating in, initiating the process, or concluding. And, again, I think it is the case that his argument necessarily implies or relies on the proposition that if he participated in receiving them into his accounts, at that moment they were proceeds. And under the definition of Section 3 and conducts, that means that because there was venue there and the wire was a continuous event, that there was venue in Massachusetts as well. And I want to point out that the new language here that was all created at once was inspired by Cabrales, which indicated that if there was, the person was solely involved in the posterior activity of money laundering and had no connection to the originating events, there would be no venue. But in response, but it noted that something different might apply if the person had aided and abetted or conspired with the generating activities or was involved in the transfer. And that's what, and in that case it could become a continuing offense. And, in effect, that's what these pieces do. They say that it's a continuing offense. You said that because of the amendment in the aftermath of Cabrales in Section 3, that the question of whether they are proceeds essentially has been eliminated, dropped out, as long as there is any participation in the wire transfer. What are the cases you rely on? Well, we cite the Carroll case, which is a district court case in our brief, and there are two other also unpublished district court cases that apply this analysis saying that not, saying that Section 3 applies to IA2, which is the transfer provision. And I can provide those to the committee. I will say this provision has been surprisingly underutilized. I found a total of nine federal cases of any kind addressing Section 3. So we would be the first circuit court to adopt your theory of what the statute means? Well, and to adopt it in the context particularly, I would say, of applying it to Section B, although I think the plain language of Section 3, since it also refers to transfers, I think it clearly does apply. But the other circuit case, the second circuit case, applied it to 1A, which was the money laundering transaction itself. But I think the language of the provision that it applies to, the entire section, and the fact that it refers to transfers, and the only other transfer mentioned in that section is transfers of proceeds, logically it applies. But as a circuit level, this would be the court to sort of address the applicability of that provision. So you would say Johnson's no longer good law? Well, this court hasn't adopted the Johnson view per se. You came pretty close to it in Richard. Right. But I think they sort of had adopted a hard and fast rule that essentially no money laundering can take place until after the crime is completed. And they sort of noted, I think, citing with approval Mencarius from the Seventh Circuit, the view that all that needs to happen is the proceeds need to be generated, the crime doesn't need to be complete. So what we're looking at is whether there's an event that tells us that we feel comfortable, you know, separates the money laundering from the anterior crime. And I think in that case, you know, that's true here. Certainly on a substantive basis, the money laundering was clearly a separate transaction. There's no question of merger or need for the money laundering. There's no need to be careful about the dividing line because these transactions were clearly separate. But if we adopted your position, wouldn't in every case of wire fraud where the recipient of the funds was going to launder them, there would always be venue in the original district? But you're still required to have participation. And participation is a meaningful limit. And it's what Cabral has said. The funds are sent, which should be in every case. Certainly. I mean, I think that that, and I think that he sort of undersells the amount of evidence there was. It shows that he was intimately involved because these were accounts that were constantly being updated and changed. And he was constantly providing that information of the difference of actual communications if they may not have been found on phones. It's very, very strong. Right. But the statute you're relying on doesn't say there has to be a lot of, it just says there has to be some. Again, I think the point here is Cabral is, I think that Congress was trying to implement Cabral and Cabral has said that if there was aiding and abetting conspiracy involvement in the transfer and the movement of funds, that that would be enough to create venue. And it's, you know, again, there's a fairness to it too, to both the government and the parties. This is only in a circumstance in which the underlying activity, as the statute said, is there's venue already for the wire fraud. And I think that's not really a good argument. There isn't here. You know, it makes sense to both the defendant and the government not to have to try it in two different places. And Cabral, I think, does support the idea if you were a conspirator, if you were an aider and abetter, if you were connected to that generating activity in the movement of funds, it's fair to you, it's fair for the government that you try it in one place. And I think, again, through section three, we don't have to get into the technical details. And frankly, I think that's what Congress meant by enacting section three, is the question, when you get to wires and funds, it can be difficult about when are they proceeds. And I think that sort of says that for that category, then we're just not going to worry about, as long as, if you were involved at the end, if you were involved at the beginning, we're going to treat it as a continuing offense, as the Supreme Court said we could under that venue, you know, at both ends of it. And there's no constitutional constraint on Congress broadening the definition for venue purposes? Well, especially where here they were seeming to just simply codify what Cabral has said was possible, because Cabral has drew these exceptions, like here, there was no connection to the anterior events, but that might be different in these other circumstances. Those were precisely the circumstances that Congress chose to capture. And I think, again, the degree of participation shown here is within the realm. He was a co-conspirator. He was also a principal in generating the funds through wire fraud, as well as receiving it into his own accounts. I think that this is exactly the situation that Congress and Cabral has had in mind. Counsel, let me ask you, Cabral was decided in 1998, the statute gets amended in 2000, and you've cited only, I think, two cases or three cases, district cases, interpreting the statute. Would that support you? Basically, it's been a quarter of a century since the statute was amended, literally. Wouldn't that support your position? Because, again, there's going to be hundreds of these similar cases nationwide, and it hasn't made it to the circuit court. Isn't that something that weighs in your favor, that nobody's really confessing this, except in some isolated circumstances? I would concur with that point. I mean, it is interesting that this has been around for a very long time, and there's a few that even have raised it at the district court level. Yeah, but that may be simply because the Justice Department hasn't pursued this theory. But if the court gives its blessing to that theory, one can guess which direction the Justice Department will take in the future. Your Honor, I won't disagree that having the law clarified would also be helpful. But I do think that it is interesting that it hasn't risen to, you know, been considered more of an issue, and your venue is often not contested. If there are any questions about any of the other issues, I would be happy to answer them. Yeah, your brother didn't have a chance to talk about the sentencing issues, where for the loss calculation, the loss to victims outside of the United States was involved. Right. It certainly was used in the loss and the restitution calculations. And, you know, I think that the point we make is that there was no objection tailored to that point at all. His point in the PSR and other... Moving beyond waivers. And forfeiture. No, I think that there's case support, and we cite it for the proposition that it can be included in the loss calculation, that loss to foreign victims of domestic crimes. You know, again, this was something, and these were sent to him, you know, in Illinois. These were coming here, would be countable. And he really, I don't think, points to any other case saying that it wouldn't be if it's chargeable as a domestic crime. So as far as loss, I think he's both, you know, has forfeited and waived it, but it also isn't, you know, just isn't supported by the law. The question with respect to the restitution, there's perhaps a little bit of a closer question. There's an out-of-circuit authority, but here the fact that he didn't raise it at all, waived it, or at least forfeited it, and points to nothing other than a Fourth Circuit case that arguably, because the facts are different, raises some question about restitution. I mean, shouldn't establish plain error. I don't think it can establish plain error. You know, in fact, there was no argument under the Restitution Act at all below, and so there's simply nothing about that at all made that's clearly a plain error issue. Just as a practical matter, one might think that these international internet romance scams and business scams is a growth area in criminal law, and that therefore these are important, both loss calculation and restitution questions. Do the Justice Department statistics show that there has been a growth in this area of crime? My conversations with our own unit are that it is, but I couldn't say whether the statistics more broadly. I'm happy to look at them because that's a good question, but my perception from talking to our unit is that this is exactly the kind of thing that's happening more and more often. It's harder and harder to trace. And these tools and these venue issues become important in these cases because they often happen across jurisdictions. There's money mules who are carrying funds that don't necessarily know what they're doing, and so these abilities to reach out and find a place where you can try them is important. Thank you. Thank you, Your Honors. Attorney Mason, you have a two-minute rebuttal. Thank you, and thank you, Mr. Court. I think it's important that we listen to some of the language that the government uses. It said, if you were a conspirator, and he used the conspirator language when answering some of your questions, but it's, as this Court said in Richard, as the Johnson decision said, money laundering criminalizes a transaction and proceeds, not the transaction that creates the proceeds. I think there's a distinction between that. And I sort of felt like the government's argument always was, certainly here on appeal, it sort of conflates the transactions and the wire fraud. And he said that Mr. Abbas was clearly involved in the transfer, and I'm not sure what that would mean because there was no evidence to support that. Again, there's the but-for argument that if he did not create the receptacles for the money, the transfers couldn't happen, but there was just no evidence to say that he was involved in the transfers originally, other than creating that receptacle. And then what I would argue as far as your question about the foreign loss is that all the losses outside the state of Massachusetts far outstripped the argument that the loss that was attributed to the people who were charged, the incidents that were charged with those who were in Massachusetts. And there's just simply hardly any evidence at all about the foreign loss, which encapsulated I think at least a third of what was. Do you agree that you're subject to the plain error test on the loss issue? I believe that it was certainly objected to. Everything outside of the Massachusetts victims were. But I think it probably still is plain error because that specifically was not objected to, nor the idea that the government failed on a preponderance standard to establish that this loss. I think you can read in the appendix the 302 report is that it's not even clear who's the alleged victim in the matter. So I would say we are still subject to that. Thank you. Thank you. That concludes arguments in this case.